UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRYCE LANEAR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:24 CV 629 JMB |
| | ) | |
| JOE TAYLOR and MICHAEL KIRN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

Now pending before the Court are the Cross-Motions for Summary Judgment (Docs. 43 and 46).  For the reasons set forth below, Defendants' Motion is **GRANTED** (Doc. 43) and Plaintiff's Motion is **DENIED** (Doc. 46).

## I.    Background

The following facts are undisputed.  Plaintiff Bryce LaNear was an inmate at the Phelps County Jail until April 1, 2025 (Defendant's Statement of Uncontroverted Facts (DF) ¶ 15 (Doc. 45)).[1]  Since 2013 and during Plaintiff's detention, the Jail had a physical mail policy that limited incoming mail to 5 inch by 7 inch postcards only (DF ¶ 1; Joe Taylor Affidavit ¶4 (Doc. 45-1)).  In 2021, the Jail permitted inmates the use of tablets and media to view (either free or for purchase) books, religious material, movies, games, music, messaging, and video-conferencing/visitation (Taylor Aff. ¶¶ 6-7).  At some point thereafter, the Jail started scanning in the postcards they received so that inmates could view them on the tablets; the postcards were then placed in the inmate's property box for return to the inmate upon his release (Taylor Aff. ¶ 16).

---

[1] Plaintiff is currently housed at the Federal Correctional Complex in Forest City, Arkansas (Doc. 36).

The Jail's mail policy[2] is, in part, an attempt to curb the introduction of drugs into the Jail by preventing paper laced with illicit liquid drugs, like methamphetamine and fentanyl, from being mailed directly to inmates.  Prior these policies, the Jail would allow inmates to have up to three books in their possession (Taylor Aff. ¶ 18).  They were allowed to order these books from reputable publishers and additional books were stored at the sheriff's department (Taylor Aff. ¶ 17).  The storage room at the sheriff's department became overcrowded, straining personnel resources and creating a fire hazard (Taylor Aff. ¶ 19).  Personnel also noted that books were treated with liquid forms of illicit drugs (Taylor Aff. ¶ 20).  As such, the Jail stopped receiving books to prevent "hazards and overdoses" (Taylor Aff. ¶ 21).  Jail personnel also found that postcards mailed to the jail also contained illicit liquid drugs; and that at least one piece of outgoing mail described how to lace mail, including (fake) legal mail, with drugs (Taylor Aff. ¶ 12, 14, 15).  The Jail states that two staff members were treated with Narcan as a result of handling the mail and the Jail dealt with a number of overdoses among the jail population around the time the tablets were introduced (Taylor Aff. ¶¶ 8, 13).  Since the introduction of the tablets, inmate overdoses "virtually stopped" (Taylor Aff. ¶ 24).

Plaintiff attempted to have a Bible sent to him on a number of occasions at the Jail but was denied by Lieutenant Joe Taylor, the Jail Administrator (Doc. 8, p. 4).[3]  Plaintiff also has been "denied access to books and magazines due to the jail not having a book cart or library and denied

---

[2] Based on the foregoing, the jail does not have a simple postcard only mail system.  Rather, the jail does not permit incoming books and publications at all and any letters or postcards that are mailed to inmates are scanned in and delivered electronically.  Thus, it would appear that no paper products, mailed from a source outside the jail, can be received by inmates in their original form.

[3] Plaintiff attached no evidence to his summary judgment filings nor does he refer to any evidence.  His original complaint is not a verified complaint (Doc. 1).  However, his amended complaint contains the certification that he "declare[s] under penalty of perjury that the foregoing is true and correct" (Doc. 8, p. 10).  As such, it is functionally equivalent to an affidavit.  See Roberson v. Hayti Police Dept., 241 F.3d 992, 994-995 (8th Cir. 2001).

the ability to order them and have them sent to me" (Id.).  Plaintiff states that the inability to receive physical mail means that he has "very limited access to my religion/materials, no access to news, and no educational reading material." (Id. 5).  Plaintiff nonetheless acknowledges that the "Inmate Handbook" indicates that he has access to a tablet that contains publications free or at a cost (Id.). Thus, Plaintiff alleges that Defendant Taylor denied him the requested physical reading material and that the Jail, through Sheriff Micheal Kirn, implements a policy that denies him access to physical religious and other reading material.

## II.    Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247.  The non-moving party may not rest upon mere allegations or denials in the pleadings.  Id. at 256.  "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment.  Id. at 248.

The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant.  Id. at 255. "Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine

whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law." Progressive Cas. Ins. Co. v. Morton, 140 F. Supp. 3d 856, 860 (E.D. Mo. 2015) (citations omitted).

## III.   Discussion

Plaintiff brought suit pursuant to 42 U.S.C. § 1983 alleging that his First Amendment rights were violated by the Jail's postcard only mail policy which prevented him from receiving paper books, in particular the Bible, at the Jail.  Prison regulations that restrict a prisoner's constitutional rights are analyzed using the factors outlined in Turner v. Safley, 482 U.S. 78 (1987), to determine whether the policies relate to a legitimate penological interest.  The four Turner factors are: (1) "whether there is a 'valid rational connection' between the prison regulation and the government interest justifying it"; (2) "whether there is an alternative means available to the prison inmates to exercise the right"; (3) "whether an accommodation would have 'a significant "ripple effect"' on the guards, other inmates, and prison resources"; and (4) "whether there is an alternative that fully accommodates the prisoner 'at de minimis cost to valid penological interests.'" Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 982-83 (8th Cir. 2004) (quoting Turner, 482 U.S. at 89-90); Thornburgh v. Abbott, 490 U.S. 401, 413 (1989) (applying Turner factors to publications mailed to jails).

Defendants argue that there is a rational connection between their interests and the policy, that Plaintiff has alternatives, that eliminating the policy would have a significant negative impact on jail operations, and that there is no ready alternative to achieving the policy goals.  Plaintiff argues that a complete ban on paper publications has no connection to security, that the alternatives are not meaningful, that the jail could make exceptions for religious material, and that there are other viable alternatives.  Defendants further argue that they are entitled to qualified immunity.

The Court is mindful that this inquiry turns on the facts of this case and the particular policies and circumstances at issue.  However, there are no material facts in dispute that would prevent entry of judgment.  See Simpson v. County of Cape Girardeau, Missouri, 879 F.3d 273, 282 (8th Cir. 2018).

A.     Valid Rational Connection

For this first factor, Defendants must show that its "interests reflect legitimate, neutral governmental objectives, and there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it."  Simpson, 879 F.3d at 279 (quotation marks and citation omitted).  Penological interests in "reducing contraband and promoting institutional efficiency are legitimate,"  Human Rights Defense Center v. Baxter County, Arkansas, 129 F.4th 498, 504 (8th Cir. 2025) (quotation marks and citation omitted), as is institutional security.  Simpson, 879 F.3d at 279.    Defendant Taylor identified three reasons why the Jail elected to pursue its mail policy: first, it sought to reduce the security issues with larger mail; second, it sought to reduce the incidence of staff contact with narcotics laced mail and reduce the amount of narcotics laced paper in the Jail; and, third, it sought to reduce the storage space and manpower required to keep books that were ordered by inmates in an effort to increase fire safety and reduce storage upkeep.  Plaintiff does not dispute that any of these concerns represent legitimate penological interests.  In addition, Plaintiff does not dispute that Defendant's enforced the policy in a neutral manner, without reference to the content of the publications.  See Turner, 482 U.S. at 90; Thornburgh, 490 U.S. at 415.

There is also a logical connection between the Jail's policy and its legitimate interests. Defendants "may seek to prevent harm that has yet to occur and, as a result, is not required to provide evidence of previous incidents of contraband reaching inmates through the mail in order

to adopt . . . [its] incoming mail regulation." Simpson, 879 F.3d at 280. Instead, Defendant's need only show that there is a "rational relationship between the policy and the objectives." Id. It is undisputed that the Jail enacted its policy, in part, to prevent paper products laced with narcotics from entering its facility and causing injury to staff and inmates. Defendants have not provided direct evidence of the effects of these narcotics laced paper products; they have only presented evidence that the Jail had to treat some mail handlers with an anti-overdose drug prior to the policy and that inmate overdoses diminished since the policy started, neither of which directly demonstrate that these illicit drug-related injuries were caused by tainted paper. However, a logical inference is that preventing paper mail from entering the Jail has dramatically decreased the amount of illicit drug related injuries thereby making the Jail and its population safer. It is also logical that the Jail can save space and resources by prohibiting books and publications – it no longer is required to house excess books and publications (if a detainee has more than three books mailed to him). As such, Defendants have shown that the Jail's policy is logically and rationally related to its legitimate interests. This first factor weighs in favor of Defendants.

B.    Alternative Means to Exercise the Right

The second Turner factor is "whether there are alternative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 90. Such alternatives "need not be ideal . . . they need only be available." Holloway v. Magness, 666 F.3d 1076, 1080 (8th Cir. 2012) (quotation marks and citation omitted) (addressing First Amendment free speech rights). Lieutenant Taylor avers that HomeWav, the entity that provides the tablets in lieu of publications, "provides many free and pay-per-view books" including "educational books, religious material such as the Bible, movies, music, games, a law library, electronic communications between inmates and staff, video visitation, and messaging" (Taylor Aff. ¶¶ 7, 22). Plaintiff does not

dispute the availability of the tablets for reading material, but rather states that he has "very limited access to my religion/material, no access to news, and no educational reading materials" because he does not have access to physical publications (Doc. 8, p. 5).[4]

Putting aside the vagueness of Plaintiff's assertions, it is clear that he had access to a tablet that contained publications, even if it did not contain all the material that he wanted. And, even if the available material was not ideal or exhaustive, Plaintiff has not demonstrated that any lack of material or limited material, through the tablets, affected the exercise of his constitutional rights.[5] For example, Plaintiff does not state that he was prevented from exercising his religion or pursuing a legal recourse or accessing other publications, just that he had limited access to physical religious material and no physical news and educational material. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 351-352 (1987) (finding that a prison policy that restricts religious expression is not unconstitutional where "respondents are not deprived of all forms of religious exercise, but instead freely observe a number of their religious obligations."). Finally, even if Plaintiff's limited access to physical material amounted to the denial of publications, "[t]he absence of any alternative [ ] provides some evidence that the regulations are unreasonable, but is not conclusive of the reasonableness of the Policy." Beard v. Banks, 548 U.S. 521, 532 (2006) (quotation and editing marks and citations omitted). At best, this factor is neutral.

---

[4] Plaintiff did not comply with Local Rule 4.01(E) in that he did not respond to Defendants' Statement of Uncontroverted Facts with responses that cited to the record. As such, all statements set forth in Defendants' Statement are deemed admitted for purposes of summary judgment.

[5] Prisoners do not shed all of their Constitutional rights upon incarceration. Shaw v. Murphy, 532 U.S. 223, 228-229 (2001). They retain the right to "receive information and ideas." Kleindienst v. Mandel, 408 U.S. 753, 762 (1972); See also, Sizemore v. Williford, 829 F.2d 608, 610 (7th Cir. 1987) ("[T]his circuit has held that in the absence of restrictions premised upon the legitimate goals and objectives of institutional confinement, prison inmates retain their First Amendment rights to receive and to read newspapers and periodicals."). As noted above, Plaintiff provides no evidence other than the statements made in his Amended Complaint. A reading of that document reveals that Plaintiff is not complaining that the *tablets* do not contain reading material; rather, he complains that he cannot have reading material mailed to him. As such, Plaintiff is not alleging that he has been wholly denied access to any and all reading materials.

C.    Significant Ripple Effect

For this factor, the Court considers "the impact that accommodations of the asserted constitutional right will have on others (guards and inmates) in the prison." Thornburgh, 490 U.S. at 418.  The accommodation that Plaintiff requested is access to paper books and magazines.  Such an accommodation would increase the number of guards required to inspect and sort through incoming mail.  Even if mail was limited, as Plaintiff suggests, to reputable publishers and religious organizations, resources would still be expended on determining which publishers and religious organizations are legitimate – it should be noted that Defendants have presented evidence that even legal mail can be fabricated.  And, Plaintiff has offered no suggestion or evidence that would detract from the Jail's interest in preventing narcotics laced paper from entering the facility, items that can cause harm to guards and inmates alike.  "In the necessarily closed environment of the correctional institution, few changes will have no ramification on the liberty of others or on the use of the prison's limited resources for preserving institutional order." Turner, 482 U.S. at 90. This factor weighs in favor of Defendants.

D.    Alternative Policies

The Jail's policies need not be the least restrictive means of achieving its legitimate goals; however, a plaintiff may present evidence that an alternative policy exists that would have no more than *de minimis* impact of jail operations and that would accommodate his rights.  Simpson, 879 F.3d at 281.  In considering this factor, the Court may take into account whether there are ready alternatives that may be obvious and easy.  Id.

The obvious alternative is the Jail's previous policy of allowing paper books and publications to be mailed to Jail for distribution to the inmates.  A return to such a policy would have more than a *de minimis* impact in light of the evidence presented by Defendants, both with

respect to staffing and space issues and the potential for the items to be laced with narcotics. Plaintiff has presented no evidence that would support any other alternative or that supports the conclusion that there is a policy that would both accommodate his rights and maintain institutional security. Murchison v. Rogers, 779 F.3d 882, 892 (8th Cir. 2015) (finding that alternatives such as a reading room or allowing inmates to sign out material are not *de minimis* alternatives). This factor weighs in favor of Defendants.

In light of the foregoing, Plaintiff is not entitled to judgment on his claim. The balancing of factors reveals that while the Jail's policy restricts Plaintiff's First Amendment rights, it is reasonably related to a legitimate penological interest and therefore constitutional. Because the policy is deemed constitutional, the enforcement of that policy, by Defendant Taylor must also be found constitutional.

E.     Qualified Immunity

"Qualified immunity shields a government official from suit under § 1983 if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kelsay v. Ernst, 933 F.3d 975, 979 (8th Cir. 2019) (citations omitted). "Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Morgan v. Robinson, 920 F.3d 521, 523 (8th Cir. 2019) (quotation marks and citations omitted). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." City of Tahlequah, Oklahoma v. Bond, 595 U.S. 9, 12 (2021).

It is within the Court's discretion to determine which prong of the qualified immunity analysis to address first. Kelsay, 933 F.3d at 979. The first prong requires an analysis of Plaintiff's

constitutional claims against each Defendant.  As to the second prong, a right is clearly established

when it is "sufficiently clear that every reasonable official would have understood that what he is

doing violates that right.'"  <u>Rivas-Villegas v. Cortesluna</u>, 595 U.S. 1, 5 (2021) (per curiam)

(citation omitted).  Although a direct case on point is not required, "existing precedent must have

placed the statutory or constitutional question beyond debate."  <u>Id.</u>  In other words, "[i]t is not

enough that a rule be suggested by then-existing precedent; the rule's contours must be so well

defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he

confronted."  <u>City of Tahlequah, Oklahoma</u>, 595 U.S. at 11 (considering a Fourth Amendment

excessive force claim).  At issue here is a ban on the receipt of written publications from third

parties outside of the Jail with access to such material available in their electronic format.  Based

on the foregoing, Plaintiff has not established that his clearly established constitutional rights were

violated and, therefore, Defendants are entitled to qualified immunity on his claims.

Plaintiff argues, however, that <u>Human Rights Defense Center</u> demonstrates the

unconstitutionality of the Jail's policy.  In that case, the Eighth Circuit considered the First

Amendment rights of a *publisher* in sending its publication to an inmate at a jail that had a postcard

only policy.  After applying the <u>Turner</u> factors, the Court found that the jail's policy amounted to

a total ban on all publications without any viable alternatives available to publishers in sending

their material to inmates.  <u>Id</u>. 129 F.4th at 504-505.  The Court further found that an alternative

policy would have *de minimis* impact on jail operations and no ripple effect as the plaintiff in that

case was the only entity that wanted to send publications to inmates.  <u>Id</u>. at 505-506.  Importantly,

the Court stated that "[i]f HRDC had an alternative means of communication (such as kiosks or

tablets) or its proposed accommodation would impose more than a de minimis cost on the Jail, we

may reach a different result as to the constitutionality of this application of the Jail's postcard-only

policy, as we have in other cases with those different factual scenarios." Id. at 506 (citing Simpson, 879 F.3d at 280-282 and Union County, 111 F.4th at 935).  Thus, Human Rights stands for the proposition that these cases require a "fact-intensive analysis" and that jail mail policies are not "always or never permissible under the First Amendment."  Id. at 507.  Human Rights does not stand for the proposition that there is a blanket constitutional bar to mail policies that prevent inmates from receiving physical publications through the mail; and, certainly, the case does not clearly establish the contours of such a constitutional right at the time of Plaintiff's claim.[6]

## IV.    Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** (Doc. 43) and Plaintiff's Motion for Summary Judgment is **DENIED** (Doc. 46).  The Clerk of Court is directed to enter judgment accordingly.


_/s/ John M. Bodenhausen_
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE


Dated this 21st day of November, 2025

---

[6] In addition, in Hause v. Vaught, 993 F.2d 1079 (4th Cir. 1993), cited by Defendants, the Fourth Circuit found, on the facts of that case, that a "ban on outside publications" for short term detainees was constitutional because they were reasonably related to penological interests under a Turner analysis.